IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MASHUN HUNTER,                      :
                                    :
     Plaintiff,                     :
                                    :
v.                                  :     CIVIL ACTION 07-0259-M
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of                     :
Social Security,                    :
                                    :
     Defendant.                     :


MEMORANDUM OPINION AND ORDER


In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 17).  Oral argument was heard on October 29, 2007.  On consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born September 2, 1965.  At the time of the administrative hearing, Hunter was forty years old, had completed a year of college (Tr. 297), and had previous work experience as a babysitter and janitor (Tr. 63).  In claiming benefits, Plaintiff alleges disability due to Irritable Bowel Syndrome (hereinafter *IBS*), anxiety, and depression (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability insurance and SSI on September 30, 2003 (*see* Tr. 14; *cf.* Tr. 44-45, 282-84).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Hunter can perform all work (Tr. 12-20).  Plaintiff requested review of the hearing decision (Tr. 10) by the Appeals Council, but it was denied (Tr. 4-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Hunter alleges that:  (1) The ALJ improperly determined that several of her

impairments were non-severe; (2) the ALJ failed to properly consider her pain under Social Security Ruling 96-7p; and (3) the ALJ improperly discounted her testimony (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  The evidence of record follows.

Records from the Mobile County Health Department reveal prescriptions for Paxil[1] and Ativan[2] for her anxiety as well as Darvocet[3] for joint aches, beginning in August 2002; she was placed on a bland diet and given Lonox[4] for her stomach (Tr. 119-24; *see generally* Tr. 119-140).  Though there are references to an abdominal series and a GI series over a five-month period of time, the Court has been unable to find the results of those tests (*see* Tr. 127-29).

A consultative psychological evaluation was performed on October 16, 2002 by Lucile T. Williams, Ph.D., who noted that Hunter, by her own report, had never received any mental health

---

[1]*Paxil* is used to treat depression.  *Physician's Desk Reference* 2851-56 (52nd ed. 1998).

[2]"*Ativan* (lorazepam) is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms."  Its use is not recommended "in patients with a primary depressive disorder or psychosis"  *Physician's Desk Reference* 2516-17 (48th ed. 1994).

[3]Propoxyphene napsylate, more commonly known as *Darvocet*, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.  *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[4]*Lonox* is used as an antidiarrheal medication.  *See* http://www.healthline.com/multumcontent/atropine-diphenoxylate

treatment (Tr. 112-14).  The Psychologist found Plaintiff to be oriented in four spheres and that she was able to make change and perform simple arithmetic; her estimated intelligence was low average.  Hunter's thought processes were intact; she had neither loose associations nor tangential or circumstantial thinking.  Her conversation was normal and she did not appear to be confused.  Plaintiff seemed euthymic and did not appear to be anxious.  Williams's impression was that Plaintiff suffered from panic disorder without agoraphobia; the Psychologist indicated that Hunter would have favorable response to treatment, including psychotherapy, within a six-to-twelve month period.

    A consultative physical examination was performed by family practitioner Dr. Eric G. Becker on October 25, 2002 who noted that Hunter was in no acute distress (Tr. 115-18).  Becker noted that Plaintiff's abdomen was not tender or distended and that bowel sounds were present.  Hunter had full range of motion of her back but was unable to squat, had a limpy gait, and had difficulty tiptoeing due to pain in her knees from a recent fall; there was, however, no limitation in the range of movement in her knees.  There was no tenderness to palpation of any of the paraspinal muscles.  Becker's impression was as follows: irritable bowel syndrome; bruising/contusion to both knees (with possible degenerative joint disease bilaterally); a history of palpitations (though none were present on examination); a history

of gastroesophageal reflux disease; and a history of falls (possibly secondary to low blood pressure though there was no history of hypertension in the limited medical records made available for the examination).

On October 28, 2002, a note from the Stanton Road Clinic indicated Hunter's complaints of bilateral knee pain (Tr. 163). Examination revealed a range of motion from 0 - 110 degrees and no patellar pain.  X-rays were negative.

On October 9, 2003, an examination at the Stanton Road Clinic noted bilateral knee pain and normal motor strength (Tr. 162).

On October 21, 2003, Plaintiff was admitted, for two nights, to USA medical Center for pelvic pain due to a complex cyst (Tr. 164-66).  Once Hunter felt better, she left the hospital, able to "engage in any physical activity that she so desire[d] to do" (Tr. 166).

On April 6, 2004, Kim M. Zweifler, Ph.D., performed a consultative psychological examination on Hunter who told her that she had been given Paxil once by an emergency room physician and that the prescription had been continued by her general physicians although she had never had any formal psychiatric treatment (Tr. 167-70).  The Psychologist noted that Plaintiff was oriented to time, place, and person and "displayed no obvious difficulties with fine or gross motor skills" (Tr. 168).

Hunter's mood and affect were appropriate; she did not appear to be anxious.  Plaintiff exhibited "no distortions of thinking or preoccupations;" her judgment was adequate but "[s]he had little insight into herself and her condition" (Tr. 169).  Zweifler's only diagnostic impression was that Hunter had multiple somatic complaints.

Records from USA Obstetrics and Gynecology,[5] spanning February 7, 2003 through December 9, 2005, reveal multiple complaints for pelvic pain for which she received one-time prescriptions for Ultram[6] and Flexeril;[7] the Court also notes a continuing prescription for Paxil (*see generally* Tr. 186-219, 269-73).  More specifically, the Court notes that a letter, dated March 18, 2003, from Dr. Kathy Porter indicated that Plaintiff's irritable bowel symptoms were stable (Tr. 215).  An examination of June 17, 2005 noted that Hunter's abdomen was soft, but not tender, with bowel sounds (Tr. 188).

Medical records from Victory Health Center, spanning May 10,

---

[5]The record reflects that Hunter gave birth to a baby and experienced some pre- and post-natal problems in August-September 2003 (*see* Tr. 141-61).  The medical evidence relevant to that birth will not be reported herein.  The Court further notes that much of the medical evidence from USA Obstetrics and Gynecology relates to this pregnancy.

[6]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[7]*Flexeril* is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

2004 through May 2, 2006, reveal multiple prescriptions for Paxil and Flexeril (Tr. 238-39; *see generally* Tr. 220-39, 277-81). Hunter was, generally, treated for anxiety and depression, palpitations, and pelvic pain though her physical exams were, mostly, normal. The Court notes that the records from Victory Health, for the most part, failed to indicate anything other than normal findings regarding Hunter's abdomen or her psychological complaints. On April 5, 2006, there was tenderness in the epigastrium (Tr. 280). A month later, Plaintiff was encouraged to increase her fiber and water intake, to exercise, and to lose weight (Tr. 278).

Patient was seen by Cardiology Associates, from July 27, 2004 through April 21, 2006 for complaints of "heart fluttering" (Tr. 240-60, 274-76). An adenosine stress test, performed on August 26, 2005 was unremarkable though there was "a large mild fixed anteropacial defect . . . consistent with [a] breast artifact or previous anterior myocardial infarction" (Tr. 254). An EKG, performed on July 19, 2005, showed normal left ventricular systolic function and mild mitral and tricuspid regurgitation (Tr. 257). A CT of the thorax, performed on March 13, 2006, was unremarkable for the upper abdomen and retroperitoneum; there was no pancreatic, adrenal, or renal mass and the spleen and liver were normal (Tr. 260). The lungs were clear though there was a soft tissue mass in the right breast

which warranted further inspection (*id.*).  A CT angiogram of the chest, performed also on March 13, 2006, was normal (Tr. 275).

Records from USAMC, dated September 6, 2005, show that Plaintiff was examined for complaints of left arm pain (Tr. 262-68).  It was noted that she had a decreased range of motion in that arm but she was in no acute distress; she was prescribed Flexeril.

At the evidentiary hearing before the ALJ, on May 10, 2006, Hunter testified that she had last worked in October 2002 and that she stopped because she got sick in her stomach, a problem that she had been experiencing for some time (Tr. 300; *see generally* Tr. 292-320).  She testified that the doctors diagnosed the pain to be IBS which they treated with medication; each spell lasted three-to-four hours and occurred two-to-three times a month (Tr. 300; 305).  Hunter testified that the urgency to go to the bathroom comes on quickly and causes her to sweat profusely and to hurt; she did not make it to the bathroom once several years earlier (Tr. 306).  Plaintiff stated that she experienced a lot of pain, especially if she bent over, because of the scar tissue that formed after her C-section; her bladder hurts constantly and forces her to go to the bathroom about eight times a day (Tr. 302-04).  Hunter experiences cramping in her legs (Tr. 307); she also experiences fluttering in her heart for which she lies down and tries to be still (Tr. 308-09).  Plaintiff can

stand for, at most, an hour because of weakness; she has fallen a couple of times (Tr. 310).  Walking more than a block and climbing stairs causes shortness of breath (Tr. 310-11).  Hunter stated that she could lift, at most, five pounds frequently (Tr. 311); her legs cramp and get stiff with prolonged sitting (Tr. 311-12).  Plaintiff stated that bending over causes her stomach to hurt (Tr. 312).  Hunter has help with cleaning her house and caring for her baby (Tr. 312-13); she needs help with personal needs such as bathing herself (Tr. 317-18).  Plaintiff testified that she cleans a little, but rests most of the time and reads her Bible; she sings in her church choir about half as much as is possible and serves as the secretary of that organization (Tr. 318-19).

Hunter first claims that the ALJ improperly determined that several of her impairments were non-severe; she specifically cites her impairments of IBS and her anxiety and depression.  Plaintiff references Social Security Ruling 96-3P and the case of *Brady v. Heckler* in making her argument (Doc. 13, pp. 3-6).

In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady*

*v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2007).[8]  The Eleventh Circuit Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

In discussing the evidence regarding her IBS, Plaintiff candidly admits that a colonoscopy and endoscopy performed on June 26, 2001, which predated her asserted onset date of October 1, 2002, were within normal limits (Doc. 13, p. 5; *see* Tr. 109).  Hunter points further, though, to the treatment notes from the Mobile County Health Department for chronic diarrhea and stomach pain (Doc. 13, p. 5).  In discussing the evidence regarding her anxiety and depression, Hunter references the treatment notes from Victory Health Center and the USA Ob/Gyn Department (*id.*).

The ALJ specifically discussed Plaintiff's IBS, noting that

---

[8]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

Dr. Becker, in his examination of October 25, 2002, found her abdomen to be non-tender, non-distended, and that bowel sounds were present (Tr. 17).  The Court would add that the treatment for IBS did not seem to be on-going and continuous; also, Dr. Kathy Porter, on March 18, 2003, less than a year after Hunter's asserted disability onset date, indicated that Plaintiff's irritable bowel symptoms were stable (Tr. 215)  At the very least, there is no indication by any physician of record, treating or otherwise, that her symptoms limited her ability to perform normal activities.[9]

As for Plaintiff's anxiety and depression, the records show that various medical sources have repeatedly prescribed medications to combat these impairments, as reflected in the summarized evidence above.  However, there is no evidence that either her anxiety or depression limited her in any fashion.  The Court would again note that, on April 6, 2004, Psychologist Zweifle, noted that Hunter had told her that she had been given Paxil once by an emergency room physician and that the prescription had been continued by her general physicians although she had never had any formal psychiatric treatment (Tr. 167-70).

The Court finds that Plaintiff has failed to demonstrate how

---

[9]The Court is mindful that Plaintiff has argued that it is not so much the underlying condition (the IBS) that causes problems for her as the symptoms associated with it (Doc. 13, p. 4).

these impairments (IBS, anxiety, and depression) impact her ability to perform work-related functions.  As such, the Court finds substantial evidence to support the ALJ's conclusion that these are not severe impairments.

Plaintiff's next two claims are that the ALJ failed to properly consider her pain under Social Security Ruling 96-7p and that he improperly discounted her testimony.[10]  The Court notes that although Plaintiff admits that "[t]he ALJ went through a litany of the assessment requirements of SSR 96-7p" (Doc. 13, p. 6), the ALJ improperly found her testimony non-credible because of her testimony regarding her daily activities (*id.* at pp. 7-8).

The Court notes that the standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether

---

[10]The Court notes that although Plaintiff set these claims out as separate, the arguments concerning them were joined together as they are "closely intertwined" (Doc. 13, p. 6; *see generally* pp. 2, 6-8).  The Court will address them together as well.

12

objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  The Court notes that SSR 96-7p also discusses how a claimant's statements about her symptoms should be evaluated.  The Court further notes that the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ found that Plaintiff was not a credible witness regarding her impairments.  Specifically, he found as follows: "[W]hile the objective medical and other evidence establishes that the claimant's impairments are capable of producing pain and limitations, her allegations of the intensity, persistence and functionally limiting effects of her symptoms are not substantiated by the objective medical or other medial or other evidence" (Tr. 19).

The Court has reviewed all of the evidence of record and finds that it does not support Plaintiff's claims of severe debilitation.  Hunter has failed to point to anything in the

record which supports her ability to stand for, at most, an hour, sit for only a short period of time, lift no more than five pounds, and walk for only a block (*see* Tr. 310-12). No doctor has indicated that Plaintiff was limited because of her pain or her impairments. The Court finds substantial support for the ALJ's conclusions that Hunter was not a credible witness regarding her abilities and inabilities and that her pain did not limit her ability to work

Plaintiff has raised three different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 30th day of October, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE